Your Honor, Raquel Hecht for the petitioner, Mr. Alvarado, who is with us in court today as well. The issue in this case is the elimination, whether the elimination of 212C relief should be applied to Mr. Alvarado. Virtually all the cases in the circuit and most other circuits use a reasonable reliance test in determining whether the statute can be retroactively applied. Mr. Alvarado makes the argument that he can reasonably rely in two different ways. First, he could have filed an application for 212 relief in 1994. And this falls squarely within the Restrepo argument in the Second Circuit. It's exactly the same argument. He forewent something of value. And that value was the... No, Your Honor. There was one opinion that, because Restrepo didn't really resolve the question of whether it was subjective or objective reliance. And there was a case that said that it had to be subjective reliance. You had to prove that you actually did consider this and would have done it. And then there was a later case that indicated that you actually had to apply. And I gather if that statute applied, you couldn't meet that. Well, Your Honor, in fact, if you look at Hernandez to Anderson, it also looks at an application as part of the reliance test. And Mr. Alvarado availed himself in exactly the same way as Hernandez to Anderson in that he traveled abroad and he applied for permission to reenter the United States. And that is availing yourself. And it's reasonably relying on the fact that you would be eligible for a waiver if needed. And just like Hernandez to Anderson... I sort of noticed that. But did he apply? Did he travel abroad now, but did he travel abroad during the relevant period? Yes, he did in 1995, and that's on page 109 of the administrative record. I apologize I didn't put that in my commute. Let me ask you. I mean, what bothers me somewhat is he applies after the statute's been repealed. Well, he... The whole statute is gone. And he says, yes, I was relying on all these years. It's very surprising you can rely on a repealed statute. He gives up something of value by not applying. What? He gives up something of value by not applying in 1994 when he's eligible. Well, why doesn't he do it then? The statute was in effect. Once the statute's gone, how does he continue to have this right to rely on the statute for the Congress's seeing fit to... Well, he absolutely would have applied if he knew the statute was going to be taken away. And that's part of the Hernandez to Anderson analysis as well, that could he plausibly claim that he would have acted differently, and absolutely he would have acted differently. But, I mean, you're saying this man, because at one point in his life he relied on an act of Congress, if Congress abolished the statute, he still got his right. Because he believed that he would in the future be able at any time... Well, but, you know, Congress disappoints us all the time. Right. But the question is... We can't rely on what they did 100 years ago or even 10 years ago. But he would have acted differently in this case. He would have put his application in, absolutely. And if he had known the statute... Well, let's suppose you... I mean, I think the fact that he did apply to return is an interesting point. But if that doesn't do it, you would have to prove... First of all, you'd have to prove that he actually... Would you have to prove that he actually would have done it? Well, I think that the circuit clearly looks at the reasonable person, and any reasonable person in his situation would have put the application in. Well, that's actually hard to say, because when you do that, what are you doing? You are showing up in the INS office. And it's often the way that people get deported. To put in your application. That's right. Right. Well, and therefore, he would have waited longer to accrue more equities. This is a man in 1993, moves to Oregon, opens his Christian bookstore, marries a U.S. citizen, puts his stepdaughters through college. He's doing all the things he needs to do to show that he would get... More broadly, in terms of... First of all, is this your primary reliance as opposed to the plea agreement? Is this where you want to put most of your eggs? The other one has value. I do think that it's not addressed in Amendarese. Because he gives up something of value, and there's no question that Amendarese did not discuss whether any plea was ever offered. Right. Is this issue exhausted, and does that matter? Maybe it doesn't matter because it's a retroactivity issue. I don't know if it does. But was this issue the restrictable issue, let's call it that? Was it exhausted? Was it exhausted below? Before the agency, yes. Whether if there's a subjective standard, then I would say it's a due process issue. And because of that, it's exhausted. Garcia Ramirez talks about that. And therefore, especially since the judge really just looked, was there a jury trial? No, we have to follow Amendarese. Ms. Heck, one of the things that is of interest to me in this case is that apparently if Alvarado Ramirez had entered a plea of guilty, he would still have been able to seek his 212C relief, even though the statute got repealed. Absolutely. He was offered a plea. Well, before we get to that, because that's something else. Now he goes through the jury trial. He's convicted. And we have our, I think it's Armandez Montoya case in which he said, well, if you go through a jury trial, you no longer have that right. Now you, I think, if you want our panel to act in your favor, would have to distinguish Armandez Montoya and tell us why this jury trial conviction should be treated differently than the one we treated in Armandez Tort. And the reason is because in Armandarese Montoya, they never discussed whether he was ever offered a plea. Yeah, now that's the thing then I guess brings us to the point. Why is the offer of a plea agreement something that would give him this reasonable right to rely? Because he gives up something of value. Because he gave up something. He gives up something of value. And in giving up something, that is evidence that you relied on the continuing availability of the relief. Because he could have entered. He could have entered the plea. And if he had known that he needed to enter the plea, he would have. But he also could rely equally on going to trial because the maximum sentence for his crime was five years. He knew he wasn't going to sentence. That doesn't seem to involve a plea agreement anywhere. But he has something of value that he gives up. How do we know that? How do we know that? He pleaded not guilty presumably because he thought he had a good chance of beating this charge. So why do we think that if he'd been offered a plea, he would have taken it? Because he would have acted differently if he knew. How do we know that? Well, he certainly would have taken the plea. Does that ultimately matter? If he knew he was going to be deported, he would have taken the plea. And if he knew he was going to lose the trial. But how do you know he knew he was going to lose the trial? He didn't know that. But he could rely on the 212C. No, no, no. He tries to make the decision. Well, I go to trial. For some reason, whatever his lawyer told him, yeah, you can beat it. So there's no giving up something. It's just a decision. I have a chance of winning. Well, he's giving up. No, what he does not want to give up is his chance of proving his innocence. That's right. If he knew that 212C, that different disabilities or burdens were going to attach to him. I have a series of related questions about this. First of all, is reliance either in general or on an individual basis the be-all and end-all of retroactivity analysis? No. And I think that if we look at Armendariz, we have to address this issue of reliance. However, Landgraf does not say that reliance is the only way that you can look to see whether new disabilities attach. And if it is reliance, does it have to be detrimental reliance? Not necessarily. No. It's, you know, can you plausibly claim that you would have acted differently is another way to look. And thirdly, if it is reliance, does it have to be individual reliance or categorical reliance? And St. Cyr, for example, if you actually look at the facts of St. Cyr, it appears that the individual actually wasn't necessarily better off by what he did. But they were looking at categories, as I understand. Right. And I do think that that is the better way for the court to look, and that is would a reasonable person in that situation have acted that way? Because when you start trying to remember what Mr. Alvarado remembered 20 years ago at this point, he may or may not remember exactly how it went, or anybody else. So could you then define what the category of people is that you're talking about who were retroactively affected even though they went to trial? Your argument, as I understand it, is that Armendariz charges took on certain impacts of going to trial, similar to the ones that Judge Noonan was talking about. You're saying, well, there's something they didn't consider because it didn't seem to be true in the facts of the case. Right. So what's that category? Well, that's the category of people who didn't have options. Mr. Armendariz is in a category of people who had options. He had the option to either take a plea that gave him certainty of being 212C eligible or going to trial, and he also had the same certainty because he was not going to be convicted of over five years. You're talking about in this case now? Yes, in my case. Whereas St. Cyr didn't have options. He was offered a 10-year sentence. But what is the difference between the categories? In order to distinguish, you say Armendariz and you meant Alvarado. Armendariz was not offered a plea so far as we know. Well, we don't know. So let's assume he wasn't. But he could have pled guilty straight up. That's right, but we don't know whether it's a favorable plea, and that is important. I'm sorry? A favorable plea meaning that it has to be a plea that gives him some certainty that he can still rely on 212C. If they offered him a plea that he'd take a 10-year sentence and he couldn't rely on still being eligible for the relief, then it's not a plea. So therefore you're saying that it matters what plea agreement he was offered? Yes, it does matter. Aren't you better off arguing that a plea agreement is a separate category and that in Armendariz, or however one says it, there's no evidence he was offered any plea? He could have pled straight up. You could always plea, but it doesn't mean it's going to give you that option to have 212C. So what's the – how does – how would accepting the plea agreement – if you're arguing that there has to be, or at least you seem to be accepting some kind of reliance factor, what was he relying on? He was relying that when he went forward with jury, he still had that same option. So he's giving up something of value on the one hand. And it's of value because he would have had a lesser sentence, not because of any immigration context, is that right? He's giving up something of value in not taking the plea because he – and that's evidence of the fact that he relied on it. But I'm trying to find out why it's of value. It's of value not because of any immigration consequence, unlike in – just a minute, stop. Unlike in St. Cyr. It's of value because he would have had an 8-month sentence instead of a 16-month sentence. Is that why it's of value? No, no. The value is in the certainty that you are getting. But your argument is that he also – given the numbers here, he had the same certainty with regard to going to trial at the time. What it goes to is to proof of showing reliance. I'm not understanding what you're saying. I'm sorry. Well, in the cases, what they're looking at is can you show some action that you've taken? Okay. So what is it? Explain to me what it is. What did he do in reliance on the availability of 212C relief? What he did was – his action was to forego something that guaranteed the right to 212C. And he did that. And he paid for something else that also guaranteed the right to 212C. That's right. Because he had options. Because he's a person who had options available to him, unlike Armendariz who presumably did not have options available to him. But it's the showing of the giving up that shows a reliance interest. That is that you acted in this other way because you could rely either way. Because you thought it wouldn't make a difference. Because you thought it wouldn't make a difference. That's right. Otherwise – Did it make a difference in the end? Would it have made a difference? It did not make a difference in the end, no. Even now, did it make a difference? If he had taken the plea as opposed to having gone to trial, would it have made a difference now? What would happen now would be that his attorney would have contacted someone like me and we would have said, don't take that plea. Offer to serve more time, but make sure it's a plea that's not an aggravated felony. For example, accessory after the fact. So he would have acted totally different now, knowing that 212C was – Was this an aggravated felony or was it a drug crime? It's an aggravated felony because it's a drug trafficking crime. I see. I see. And so we would have acted totally different at this point in time, knowing that there's no 212C. At that point in time, it didn't make any difference whether it was one or the other. Right. It didn't make any difference at that time. But if he had known it was going to be eliminated, he would have acted in a totally different way. He would have – obviously, they were interested in plea bargaining with him. They gave him eight months to – But that's why it's hard to figure out how he was relying on the plea he was offered because the plea he was offered wouldn't have made any difference. Well, that – Or quite possibly. The issue there is just looking for ways that he would have – that he acted that shows some sort of reliance. And he didn't need to take that plea. It's really just looking for a way to show his actions made him rely. And I see I'm out of time. I was hoping to resume. Thank you very much. All right. Thank you. I'll give you a minute or two in rebuttal. Good morning. May it please the Court. My name is Dallin Hoya, a trial attorney with the U.S. Department of Justice, and I represent Respondent Attorney General on this matter. Despite the agency following the Court's guidance to the letter and Petitioner's case not fitting into any of the exceptions carved out by this or any other court for preserving 212C relief. Well, that's not true. It fits into the Third Circuit's case law directly, doesn't it? Your Honor, I actually disagreed because in the Third Circuit, Panopla – first of all, Panopla was eligible for relief when Panopla applied. That's the difference in this case. Petitioner was not eligible for relief. In fact, when he was convicted of his crimes, he had only been a legal permanent resident for a year and two months. So he immediately began – he immediately embarked on a lifestyle that made him ineligible for relief. And what happened – that's actually the significant distinction in this case from all the other cases because each and every other case, especially in the Circuit, have always found that the alien was eligible for relief at the time the important act was heard. What do you mean by eligible for relief? At what time? At the time when they acted. For example, in Hernandez v. Anderson, this Court's decision, in which I-28J, Hernandez v. Anderson was eligible for naturalization in 1995, which means she was eligible for naturalization before she later became ineligible for suspension of deportation. So in this case, Petitioner was not eligible in 1991 when he was convicted. He'd only been a legal permanent resident for a year and two months. He didn't become eligible for 212C relief, as far as we know, based on the factual record, until 1996. Now that's an important point that I need to point out in this case because we have been here discussing a lot of things that Petitioner would have done, a lot of facts that would have changed. The problem is that this Court is limited to the record before it. And the record before it, the findings of fact were never challenged to the Board. If you look at Petitioner's Notice of Appeal, he never filed the brief. Petitioner was represented by the same counsel, but he never filed the brief to the Board. He filed a Notice of Appeal, and in that Notice of Appeal, he never challenged the findings of fact. The immigration judge made a very clear finding of fact, that he didn't find Petitioner's claim to have ever been offered a plea agreement probative or reliable. When you look at an immigration judge's decision, he could not have been more clear. He did not believe what Petitioner was saying. He did not believe that he was accurate. That doesn't mean he found an adverse credibility decision. That means he simply didn't find evidence supporting his claim. Well, that can ultimately matter because the BIA essentially held it didn't matter, even if it were true. So they never addressed any concern about the fact finding. They just said even if it were true, he couldn't be eligible for a leave. So if we were concerned about it, if we thought that was wrong, we would have to remand to the Board. Well, Petitioner should have, first of all, exhausted it to the Board. But the second point is that he waived it in his brief. He never argued. It would be more useful to me if he actually addressed the issue. I'm sorry? It would be more useful to me if he addressed the legal issue. I think in addition, I mean, for example, even if he did actually have a plea agreement, even if he was offered a plea, that's an important point from Panopola because in Panopola, as we pointed out in our brief, almost every single criminal defendant is offered some kind of plea agreement. So if this Court decides to carve out the exception that Petitioner is asking for today, it's basically opening up 212C relief for every single criminal felony. Okay. Let's assume that's true. Why shouldn't we do it? Well, for many reasons. First of all, I think it goes beyond the Supreme Court's guidance in St. Cyr. Okay. Let's assume that's true. I mean, there are some guidance. There is still a retroactivity analysis. Why doesn't it apply? I'm sorry? I mean, St. Cyr was about one set of circumstances. It applied a set of standards. If we take the set of standards and apply it here, why isn't the result what she's saying it is? Well, because, first of all, I think St. Cyr pointed out there needs to be detrimental reliance. Where did it say that? I'm sorry? Where did it say that? Well, if you look at the reliance in St. Cyr, they pointed out that St. Cyr was employing landscrap analysis. Landscrap analysis has never, in general, required detrimental reliance. In fact, it's never required reliance. It just requires attaching new consequences to old acts. Right. And those consequences were detrimental. They may have been detrimental in St. Cyr. Let's assume they were, but there's no requirement in general retroactivity analysis or landscrap analysis that there be detrimental reliance. Is there? At the very least, Your Honor, it upsets settled expectations. And Petitioners never demonstrated that he had settled expectations because at the time that he went to trial, he had no reasonable expectation of ever being eligible for 212C relief. Why is that? Because when he went to trial, this was before ADEPA and before IRA-IRA, and at that time he couldn't have possibly hoped that this relief would remain available to him. If you look, first of all, his reliance on 212C was unreasonable and wholly speculative at that point because the laws can change. As Your Honor pointed out, laws do often change. Congress does often eliminate or provide new relief. But in this case, it's very clear. In 1991, he had no reasonable basis to believe he would end up accumulating the amount of time that he would need to ever qualify for 212C. He was a legal permanent resident, was he not? He was a legal permanent resident. And he, you know, if he wasn't going anyplace, he would be here. Yes, but at the same time, he had been convicted of, he had actually proceeded to trial on very serious drug conviction. I think it's very reasonable to believe that Congress would do something to eliminate relief for that class balance, and they did with ADEPA and they did with IRA-IRA. I have one question I'd like to ask you. This relief resides in the discretion of the Attorney General. Why did the Attorney General just not deny it and save us going through this appeal? Well, Your Honor, I'm unsure. I mean, that would be the simple way to handle this, wouldn't it? Well, I think the agency decided to handle it on the basis of this Court's decision. I know, but what a lot of effort when, if it's a matter of discretion, the Attorney General would say, I exercised my discretion. You don't get it. Your Honor, I think that's a great point, but I think when the Attorney General does exercise his discretion, it's challenged because individuals believe that it's arbitrary when there's not a legal basis for it. We have a very difficult time disputing. Well, he could have said that this man was a heroin dealer. I'm not going to exercise. It would have been as simple as that. That's true, Your Honor. But I think it's also as simple as that to say that the agency followed Airman Daris to the point. Well, okay. Now you're changing the point. When I point out another way, you might think about it the next time this sort of thing comes up. You seem, however, mainly to be relying on the fact that he didn't have the seven years in at the time that all this happened. That's a very important point. Yes, Your Honor. Well, it seems to be your major point. Let's suppose he had. Let's hypothesize a different person. Then what? Well, I think that that does place this case beyond the other decisions. But that's not this case. He definitely didn't have a. . . I'd like to point out what Justice Story said in Landgraf. He said, The provision operates retroactively if it would impair rights a party possessed when they acted. Petitioner did not have a right to 212C when he acted. So you think 6 here doesn't apply to somebody who had not been here yet for seven years but pled guilty knowing that there was a 212C. Let's assume that this person actually consulted a lawyer and was told, if you stay here two more years, you're going to be eligible for 212C relief. But if now you're convicted of an aggravated felony, you won't be, so you better plead guilty. Well, I think that would be a different set of facts. But the problem is. . . Of course it would be a different set of facts. That's why you use hypotheticals in the law. Your Honor, it's difficult for me to answer a hypothetical because the agency did not address that hypothetical. And the problem here is that we are now looking at a case. . . But your argument. . . Your whole argument has to depend on the fact that the answer to the question I just asked you was that he wouldn't have been eligible. And I don't believe that. Well, the thing is, is that he was not. This case, the facts prove that he was not because he had not accumulated the seven years. He had to have seven years, and he could not have reasonably relied that he would continue to accumulate those amount of years, years after that. He wasn't. . . So then the answer to my hypothetical has to be that Mr. St. Cyr would not have been. . . That the St. Cyr rule wouldn't apply to my hypothetical person. Right? And do you think that's the right answer as to St. Cyr? I think St. Cyr definitely. . . St. Cyr doesn't apply to an individual who proceeded to trial. This individual proceeded to trial, Your Honor. And I think that's the difference. I apologize. But you keep switching gears. Okay. You're telling me that the most important thing here is that he was not. . . had not been here long enough yet. And you won't answer the question of whether if he had been offered a plea but had been here long enough, he would be eligible. So then I say, well, fine. Let's look at St. Cyr and take somebody who hadn't been here long enough. And you say, I want to answer that question because this guy went to trial. Now, you need somewhere to come down somewhere. So where are we? I'm not. . . I'll be honest, Your Honor. I'm not sure I quite understand your question. I guess you don't. That's the difficulty. Okay. So I apologize for not giving you a more direct answer because I don't quite understand. What I do understand about this case is it is distinguishable, not only from every other. . . But distinguishable is a really shifty legal word. It may be distinguishable, but the question is, should it be distinguished? Is there some principled reason why we should treat these things differently? Yes. As opposed to we can give you a distinction. Yes. Settle that. . . What's the reason? Because St. Cyr made it very clear that when a statute is found retroactive, it upsets settled expectations. Petitioner had no settled expectations whatsoever and continued to be eligible for 212C relief when he went to trial because he rolled the dice and he risked a sentence that was up to 15 years. He ended up being sentenced. . . Opposing counsel is wrong. He ended up being sentenced with eight years. When you add up the terms, some of them were consecutive and some of them were stayed. In the end, he did not end up serving. I believe he served 16 months. But in the end, he risked a 15-year sentence at the time, which would have made him. . . Patrol in Almentara? So he pled to more than. . . He would have made him eligible for an aggravated felony anyway? Yes. At the time, the Immigration Act of 1990 had already made an individual served more than five years ineligible. So he risked being ineligible at the time. So how can you say he had settled expectations when he risked putting himself ineligible for. . . Because the Supreme Court did say that and held that St. Cyr was not to be applied retroactively to somebody who pled guilty, even if the. . . Right. If he had pled guilty. But I think that's the important point, is he didn't plead guilty. And I think. . . That does seem to be rather important. It is. Because it would seem that the case is then controlled by. . . Our Ninth Circuit case. He went to trial. He's not eligible for the retroactive application of the repeal 212C. Is that right? I think that's correct, Your Honor, because. . . Isn't that the end of the case or am I. . . The end of the case is Armendaris controls. Armendaris found the statute was not impermissibly retroactive. And that's the same case here. We don't know if Armendaris was ever. . . But the reasons Armendaris gave were because there couldn't be reliance in committing the crime, which certainly that's. . . And there wasn't. . . Or in not fighting the conviction more vigorously. But it didn't consider, presumably because that wasn't the facts of the case, there's no indication that there was, that it was, reliance in determining to go to trial rather than take a plea, an advantageous plea agreement. That does not seem to have been presented in the facts of Armendaris and it doesn't discuss that. Is that right? Your Honor, that is the perfect point that I've been trying to make, is that we don't know if Armendaris was ever offered a plea. The same is actually true in this case, because if you look at the factual findings by the immigration judge, which were not challenged, which the petitioner has not exhausted any issue, so this court cannot review, the immigration judge did not find that he was offered a plea. But the BIA did not rely on that ground. It relied on an across-the-board exclusion even if he was in fact, he did in fact, was in fact offered a guilty plea. So we can't decide it on that basis. We have to address the legal issue. That's correct. This court, but this court can't also pull the facts out of the record that we're not. . . I'm not going to pull it out. We're going to decide a legal issue and then send it back to the BIA to decide if we decided that there was a legal possibility here, send it back to the BIA. So let's assume that that's how we would proceed. Now can you tell us why the legal distinction doesn't exist? Because the legal distinction in this case is that, in this case, it's identical to Armendariz because even if he was offered some kind of plea, he turned it down and proceeded to trial. He rolled the dice. He had no reasonable reliance. You're saying there is no such legal distinction. It doesn't matter whether. . . Correct. But there's certainly, is there not a class of cases, whether this is one of them or not, in which someone could have said the reason I'm going to go to trial, I was offered a plea agreement, I would have been sure of serving less time and I would have been sure of not having any immigration consequences. But given the state of law now, if I go to trial, I'm also going to have no immigration consequences. So I choose to go to trial and see if I can eliminate a conviction altogether. Whereas now, if he pled guilty to what he was offered, he would have no immigration consequences, but because he went to trial, he does. There is a class of such people, whether this person is that person or not. Do you agree with that? Yes, Your Honor. I don't believe this case is that case. Okay. Well, suppose it were. Then what?  Let's say there's a class of people that we could define. Let's not get into individual reliance, but a class of people who could have pled to something that would now assure them not having immigration consequences. But at that time, there was no reason to do that. One question, Your Honor. Would that include individuals whose sentences would exceed five years? No. No. Let's say no. Okay. So say it's a misdemeanor of some kind of low-level. Because he was offered a low-level misdemeanor. Either way, they could proceed to trial. I just wanted to catch your read on the question of whether there is a class of such people who would not be governed by Armendariz, whether this person is or not. Well, Your Honor, I think that an individual who either they proceeded to trial, they were guaranteed not having less than five years, and they would have definitely ended up eligible, and they were eligible at the time that they decided to accept the plea. So it's not like this case. But also the individuals who, say, for example, offered a plea that would have also still preserved their eligibility, there is a possibility. But I don't believe that this is that case. Therefore, you're saying that Armendariz does not govern all instances in which people went to trial. I believe there could possibly be an exception. For example, this court found in Hack the individuals who gave up the right to an appeal. But I think there has to be something important that's given up. That's one point I want to make before my time expires. If you look at the decisions, you look at St. Cyr, you look at Hernandez to Anderson, you look at Hacke, St. Cyr gave up a constitutional right to a fair trial. That's what St. Cyr gave up. It was very important. Hernandez to Anderson gave up an important benefit, naturalization or citizenship. Hacke gave up the right to an appeal. These are all important positions. But what about in Landgraf or Hughes? Right. No, in Landgraf, I think Justice Doreen made it very clear. There has to be some kind of reasonable reliance. No, exactly. That's exactly wrong. They didn't say there has to be a reasonable reliance. There has to be that or an attachment of consequences to past acts. Are you aware of the Third Circuit opinion, which is Atkinson v. Attorney General, where they specifically say, where they say the restrictor applies whether or not there was actual reliance because reliance doesn't matter? Your Honor, I'm not aware of that decision. I'm not. I'm aware of the Hernandez decision in the Third Circuit, which basically found identical to what the government's asking in this case. Recently, Hernandez found the Third Circuit distinguished monopoly and basically said that because they proceeded to trial, they could not claim that 212C was impermissibly retroactive. Okay. Thank you, Your Honor. Thank you. Thank you. If I may, quickly, Your Honor, I'd just like to mention that in St. Cyr, it does directly address the issue of the possibility of relief that you are looking at. Therefore, even if he wasn't eligible at that specific time, he still had the possibility and he still could have relied on that in making his decisions. Also, in Hernandez v. Anderson, it's the giving up of the application in 1990, of her right to apply in 1990 for naturalization. That's the thing of value that she gives up, and that's the same here. When he gives up his right to apply for discretionary relief, when the relief is available, that's the same reliance interest that one can point to in showing that he should have been given that opportunity. He would have acted differently if he had known it was going to be taken away. Okay. Thank you very much. Thank you. Thank you, counsel. The case of Alvarado-Ramirez v. Holter is submitted.
judges: Noonan, Thompson, Berzon